DAVID T. BONNELL

*v.*

ALLEN HOLT *et al.*

1. VENDOR'S LIEN—*not assignable.* As a vendor's lien is not assignable, the assignee of a note given for the purchase money of land, can not enforce the lien of the vendor.

2. ASSIGNMENT—*liability of assignor.* Where the maker of a promissory note which has been assigned is, from the time of the assignment, and since, utterly insolvent, the liability of the assignor to the assignee will become fixed.

3. ADMINISTRATION—*preference in favor of creditor in this State when foreign administrator sues.* Where a foreign administrator seeks to enforce the collection of a debt in this State, for the benefit of heirs, (the claims against the estate in the foreign jurisdiction being all paid,) by bill to enforce a vendor's lien upon real estate sold by the intestate, a creditor of the intestate living in this State will have the preference in the proceeds of the sale of the land.

4. Where A sold land in this State, giving a bond for a deed, and taking two promissory notes for the purchase money, and assigned the note last maturing

to B, a resident of this State, and A then removed to Missouri, where he died, and administration was had upon his estate, in which all claims presented within the period of limitation were fully paid, and the administrator of A filed his bill in this State, against the purchaser of the land and B, to enforce a vendor's lien, in which suit B filed his cross-bill praying to have his note first paid, alleging and showing the utter insolvency of the maker of the notes, so that a suit against him would have been unavailing, it was *held*, that as the estate of A was liable to B on the assignment, the latter had the better right to the proceeds of the land, and might recover his debt in such suit, without taking out letters of administration here.

5. HEIRS—*liability for ancestor's debt.* By our statute where lands descend to heirs, the same actions upon demands against the intestate which lie against the administrator may be maintained against the administrator and heirs, and the latter are made liable to the creditors of the ancestor to the full amount of the lands descended.

6. EVIDENCE—*judicial notice—statute of another State.* The courts can not take judicial notice of the statute law of another State; and a law of another State limiting the time for the presentation of claims against an estate, does not apply in this State in a suit by a foreign administrator to collect a debt due his intestate, as against a creditor of the estate residing in this State.

7. JURISDICTION—*of minor heirs.* The entry of the appearance of minor heirs defendants in a bill in equity does not give the court jurisdiction of their persons. This can be acquired only by service upon them or by publication. An attorney has no authority to enter the appearance of minor heirs not brought into court by personal service or publication of notice.

APPEAL from the Circuit Court of Jersey county; the Hon. CYRUS EPLER, Judge, presiding.

The bill in chancery in this case, filed March 6, 1872, charges that on the first day of November, 1868, one James M. Osborne, then of Jersey county, in this State, sold to one Aquilla Reeves the land in the bill mentioned, for $340, taking from Reeves his two promissory notes, each for the sum of $170, the one payable on the 1st day of January, 1870, and the other on the 1st day of January, 1871, and giving to Reeves a bond for the conveyance of the land to him upon the payment of the notes; that Osborne assigned one of the notes, that last maturing, to David T. Bonnell, and removed from the State of Illinois to Missouri, in which last State he died intestate, in the month of February, 1870; that Reeves never paid any-

thing on the notes, and abandoned the premises, and had died insolvent. The bill further shows that the complainant Allen Holt, as public administrator of Andrew county, in the State of Missouri, administered upon the estate of Osborne, and, as such administrator, he filed this bill in the circuit court of Jersey county, in this State, to subject the land to the payment of the note first falling due, and which Osborne continued to hold at the time of his death. Bonnell is made a party to the bill, and it admits that he is the holder of the second note, falling due January 1, 1871, but claims that complainant, as administrator, is entitled to a prior lien upon the land for the satisfaction of the note which first fell due, on January 1, 1870. Bonnell answered, and filed a cross-bill March 24, 1874, setting up the assignment to him by Osborne in his lifetime, of the second note last falling due, by indorsement thereon under his hand, the continued entire insolvency of Reeves, the maker of the notes, ever since the making of them, whereby the liability of Osborne as indorser became fixed, and asking for affirmative relief in the payment of his note first, out of the proceeds of the sale of the land, and for the sale of the land if the note should not be paid by a day to be fixed. The answer of Holt, the administrator, to the cross-bill, sets up that the estate of Osborne had been duly administered upon in the State of Missouri, and the time for the presentation of claims against it there had expired long since; that the estate was solvent, paying all the indebtedness presented against it, and having a surplus to distribute to the heirs. By the original bill and cross-bill, the heirs respectively of both Osborne and Reeves were made parties thereto, but the heirs of Osborne were not served with process; their appearance was entered by an attorney, and being infants a guardian *ad 'litem* was appointed for them, but he filed no answer for them.

Upon final hearing, on April 4, 1877, and upon proofs taken, the court below dismissed the cross-bill, and ordered the sale of the land, and the payment, out of the proceeds of the

sale, of the note held by the complainant in the original bill. Bonnell appealed from the decree.

Messrs. WOODSON & WITHERS, for the appellant.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It is supposed by appellees' counsel that appellant's only ground for any claim of relief is that of a vendor's lien, as being the holder of one of the two notes given for the purchase money of the land, and that under the decisions of this court, an assignee of such a note is not entitled to the benefit of such a lien. As this court has frequently decided that a vendor's lien is not assignable, we do not see how, under those decisions, appellant can assert any claim here, on the ground of such a lien. His title to relief, if any, must be rested on some different principle. It is clear, from the pleadings and proofs, that Reeves, the maker of the note which appellant holds by indorsement from Osborne, was, from the time of the making of the note, ever afterward, utterly insolvent, so that the institution of a suit against him would have been unavailing; wherefore, under our statute, the liability of Osborne as indorser of the note became fixed.

Appellant has, then, a valid claim for the amount of the note, against the estate of Osborne.

Holt, the foreign administrator of Osborne, appointed in the State of Missouri, the domicil of the deceased, comes into this State to collect, by suit, assets of the estate of Osborne. By the doctrine of the common law he could not have brought such suit in this State, in his official capacity, but, in order to maintain such suit here, he must have obtained new letters of administration in this State, and the new administration here would be treated as merely ancillary or auxiliary to the original foreign administration, so far as regards the collection of the effects and the proper distribution of them. Still, however, the new administration here would be made subservient to the rights of creditors, legatees, and distributees, resident within

this State, and the residuum be transmissible to the foreign State only when a final account had been settled in the proper tribunal here, upon the equitable principles adopted by our own law, in the application and distribution of the assets found here.  Story Confl. Laws, § 513.

In *Dawes* v. *Head*, 3 Pick. 144, after stating it as the general rule that the distribution is to be made according to the laws of the country where the deceased was domiciled, it is said : "An exception to the general rule grows out of the duty of every government and its courts to protect its own citizens in the enjoyment of their property and the recovery of their debts, so far as this may be done without violating the equal rights of creditors living in a foreign country.  In relation to the effects found within our jurisdiction and collected by the aid of our laws, a regard to the rights and interests of our citizens requires that those effects should be made answerable for debts due them, in a just proportion to the whole estate of the deceased and all the claims upon it, wherever they may be.  In the several cases which have come before this court, where the legal character and effects of an ancillary administration have been considered, the intimations have been strong that the administrator here shall be held to pay the debts due to our citizens."

The present suit is under the authority of our statute enabling a foreign administrator or executor to prosecute suits to enforce claims of the estate of the deceased, or to sell lands to pay debts, in any court in this State, in the same manner as if letters testamentary or of administration had been granted to him in this State.  The statute does not apply where administration has been obtained in this State; and it contains the provision that, when, after any suit commenced under it, and before final judgment, administration upon the estate is obtained in this State, the resident administrator or executor shall, upon motion, be substituted as party to the suit, and it shall proceed as if originally thus instituted, and the benefits of the judgment or decree shall enure to such resident administrator or exe-

cutor, and be assets in his hands. Rev. Stat. 1874, p. 112. An obvious mode of making this suit available for the satisfaction of appellant's claims, would have been to have taken out letters of administration in this State and proceeded under the last recited provision of the statute. But to have done that would have been attended with inconvenience, and an expense which might have absorbed a good portion of appellant's claim, and we are inclined to consider that under the facts of this case it was not necessary. The widow and the only heir of Reeves are made parties, the latter an infant, answering by guardian *ad litem.* No claim to the land is set up in their behalf, nor does it appear that Reeves ever paid any of the purchase price of the land.

The answer of Holt, the administrator, to the cross-bill of appellant, sets up that the estate of Osborne was duly administered upon in Missouri; that it was solvent; that all claims presented against the estate were paid, leaving a surplus to distribute to the heirs. It may be inferred, then, that there are no claims of creditors involved other than the claim of appellant; that the personal estate of the decedent has been exhausted and distributed; and the land belongs to the heirs of Osborne, subject to the payment of appellant's claim against the estate, being the note he holds, or further perhaps, as the administrator claims, subject to the payment of the note he holds.

But this latter note, as appears, belongs beneficially to the heirs alone, and its collection as here sought to be enforced is for their sole benefit, the proceeds to be paid to them. As between the heirs of Osborne and appellant, the latter has the preferable right to the proceeds of the sale of the land as well as any other portion of the estate, to the extent necessary for the payment of his claim, and in justice and equity should be first paid before the heirs be allowed to appropriate to their own use the property of the estate. The present proceeding is to enforce such an appropriation by the aid of our own laws— to convert realty in this State, which is subject to the payment

of a just claim of one of our own citizens against the decedent, into money, and withdraw the same into a foreign jurisdiction, where the claim of appellant might be endangered, if not incapable of enforcement. As it sufficiently appears there will be no rights of creditors to be affected, and that it is a question solely between the heirs and a creditor of the estate residing here, we think it a case where appellant, a citizen of this State, should be protected in the recovery of his debt, agreeably with the spirit of the principles as recognized in the authorities above referred to. Such is the equity of the case, and appellant has here been brought into a court of equity by the administrator for the adjustment of their respective equities. By our statute, where real estate descends from an intestate to heirs, the same actions upon demands against the intestate which lie against administrators, may be maintained against the administrators and heirs; and the heirs are made liable to the creditors of the ancestor to the full amount of the lands descended.

It is set up in the administrator's answer to the cross-bill of appellant, that the time limited by the law of Missouri for the presentation of claims against the estate of Osborne had expired. No proof appears upon the subject. We can not take judicial notice of the statute law of that State; and such a law there would not apply in this State.

The minor heirs of Osborne were made parties defendant in the original bill and cross-bill, and were named as such in the summons, but were not served with process or otherwise brought into court. Their appearance was entered by an attorney. This was not sufficient to give the court jurisdiction of the persons of the minor heirs. That could be acquired only by service upon the minors themselves or by publication of notice.

The attorney had no authority to enter their appearance. *Greenman* v. *Harvey,* 53 Ill. 386; *Clark* v. *Thompson,* 47 id. 25; *Hickenbotham* v. *Blackledge,* 54 id. 316.

The decree will be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*