*In re* J.O., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. J.O., Respondent-Appellant).

Second District    No. 2—97—0420

Opinion filed February 5, 1999.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Alison J. Norwood, of Streamwood, for appellant.

David R. Akemann, State's Attorney, of St. Charles (Martin P. Moltz and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Respondent minor, J.O., appeals from the orders of the circuit court adjudicating him a delinquent minor, making him a ward of the court, revoking his probation, and committing him to the Department of Corrections, Juvenile Division (DOC). The minor argues that, because the Department of Children and Family Services (DCFS) was not named and served as his guardian and a necessary party to the proceedings, all orders entered by the court regarding his detention, adjudication of delinquency, and disposition are void as a matter of law. We affirm.

On April 29, 1996, the State filed a petition to adjudicate respondent as a delinquent based on his alleged conduct in committing, *inter alia*, various counts of aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(2) (West 1996)) and the unlawful use of weapons (720 ILCS 5/24—1(a)(4) (West 1996)). On May 13, 1996, the petition was amended to include the reckless discharge of a firearm (720 ILCS 5/24—1.5 (West 1996)). The allegations arose from an incident in which the minor (date of birth November 8, 1981) had fired a handgun in the direction of other youths near a residence in Aurora, Illinois. The petition named J.O. as the minor respondent and listed his mother, Maria O., with an Aurora address and his father, Jose O., with an unknown address. The petition did not name a legal guardian or custodian.

The minor respondent was present at the initial detention hearing on April 29, 1996, and the court appointed counsel for him. The State

informed the court that respondent was a party in another juvenile case (abuse and neglect) involving the DCFS and that there had been an outstanding youth warrant for his detention. On May 8, 1996, the minor, his mother, and his sister were present at a hearing in which counsel filed a discovery motion and motion to suppress. On May 13, 1996, an adjudicatory hearing was held. The minor, his mother and sister, and a DCFS representative, Mary Beth Corrigan, were present. The court was informed that respondent was a ward of the court in the DCFS case. The minor, represented by counsel, admitted to the charges of reckless discharge of a firearm and unlawful use of a weapon after the court admonished him of his rights and accepted his admissions as voluntarily made. The court then entered a finding of delinquency and continued the matter to May 28 for the determination of wardship and for disposition.

The dispositional hearing, during which the court heard testimony, began on May 28, 1996, and was continued to May 30. The minor's mother was not initially present, but counsel noted that she had been reminded to attend this hearing. Alicia Klimpke, a juvenile probation officer, testified regarding the social history investigation of the minor. The minor's Kane County guardian *ad litem*, who had handled the minor's other juvenile proceedings since February 1993, also testified and recommended placement in a restricted, secure setting because of his tendency to run away and get into an undesirable environment. The State then sought to present the testimony of Susan Roehrig of the DCFS, the legal guardian of the minor; the matter was continued for further testimony.

At the May 30, 1996, dispositional hearing, the minor, his counsel, and the minor's mother and sister were present. Susan Roehrig, a follow-up worker for the DCFS, testified that she was familiar with the minor's abuse and neglect case and stated he was under the guardianship of the DCFS. She testified concerning the reasons for the minor's removal from his home and his placement at the Nachusa Lutheran Home and his progress and history there, including his running away. She believed the minor needed a more secure facility and counseling for depression and substance abuse. The court considered the testimony of other caseworkers and employees of the Nachusa Home regarding the minor's history and conduct.

At the June 3, 1996, hearing, the court considered final arguments. The minor was present with his attorney who stated that the mother was notified but was not present. After hearing the arguments of counsel and considering the evidence and the reports submitted, the court made the minor a ward of the court and ordered him committed to the DOC for a 45-day diagnostic period. The matter was continued

for further disposition with a view to later placement in the Challenge Program.

On July 11, 1996, the court received reports from Juvenile Court Services and the DCFS and an evaluation from the DOC; the matter was continued. On August 1, the minor, his counsel, and Corrigan of the DCFS appeared. The court vacated the minor's commitment to the DOC, placed the minor on 18 months' probation, and ordered him to complete the Challenge Program through the Kane County Youth Home. On November 4, 1996, the State filed a supplemental petition to revoke the minor's probation for running away from the Challenge Program, and the court issued a youth warrant.

On February 3, 1997, the minor appeared with his mother and sister and appointed counsel. The State again noted that the minor had previously been under the guardianship of the DCFS but that a court order had discharged the DCFS as legal guardian as of January 27, 1997. The minor's counsel noted that the other (neglect) case was now closed and opined that guardianship reverted to the minor's mother, who was present at the other proceeding. The State presented the court order from the other case to the court and served the mother in open court with the supplemental petition to revoke probation. The court ordered the minor detained and continued the matter for a hearing.

On February 11, 1997, the minor appeared with his mother and counsel, admitted the allegations in the petition, and waived a further adjudicatory hearing. The court accepted the admission and found the minor in violation of his probation. On March 11, 1997, the minor appeared at the dispositional hearing with his mother and sister and his appointed counsel. Among other witnesses, Corrigan of the DCFS testified that the DCFS was discharged as legal guardian by the court order on January 27, 1997. She then gave a history of the minor's placements and described the positive and negative aspects of his conduct. The record indicates that the minor was also being detained on another (criminal) offense that occurred while he was absent from the Challenge Program. The court determined that it was in the best interests of the minor and the public that he be committed to the DOC and so ordered. This timely appeal followed.

■ The thrust of the respondent minor's argument is that the circuit court lacked jurisdiction because, he claims, his mother did not have legal guardianship or custody of him and the State failed to name and serve summons upon the DCFS as the legal guardian. Due process requires that notice in juvenile proceedings be equivalent to that constitutionally required in civil and criminal cases. *In re T.A.*, 181 Ill. App. 3d 1034, 1037 (1989), citing *In re Gault*, 387 U.S. 1, 18 L.

Ed. 2d 527, 87 S. Ct. 1428 (1967). In a juvenile proceeding, due process requires adequate notice to a minor and his parents. *In re C.R.H.*, 163 Ill. 2d 263, 268 (1994). In *Gault*, the Court found that due process requires that a minor and his parents or guardian be notified in writing of the specific charge or factual allegations to be considered at an adjudicatory hearing on delinquency. *Gault*, 387 U.S. at 33, 18 L. Ed. 2d at 549, 87 S. Ct. at 1446; *C.R.H.*, 163 Ill. 2d at 269.

■ Section 5—15 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5—15(1), (3) (West 1996)), in effect at the time of these proceedings, requires that, when a delinquency petition is filed, notice shall be directed to the minor's legal guardian or custodian and to each person named as a respondent in the petition; the summons shall require each respondent to appear and answer the petition on the date set for the adjudicatory hearing. Section 5—13(2) of the Act requires that the petition set forth the names and residences of the minor, the parents, and the legal guardian or persons having legal custody or control of the minor, or of the nearest known relative if no parent or guardian can be found. 705 ILCS 405/5—13(2) (West 1996). The notice provisions relevant here are similar to the ones in the newly enacted Juvenile Justice Reform Provisions of 1998. Pub. Act 90—590, eff. January 1, 1999 (adding 705 ILCS 405/5—520, 5—525). It is well established that the right to due process of the minor and his mother may be violated by the failure to give them proper notice (*C.R.H.*, 163 Ill. 2d at 271) and thereby render the proceeding void (*In re J.W.*, 87 Ill. 2d 56, 60 (1981)). A pleading in a juvenile proceeding that does not name and notify the necessary respondents, who include the parents or a legal guardian, fails to invoke the jurisdiction of the court and renders its orders void, unless the inadequate service of notice on the party can be deemed waived—such as where the parent had actual notice and appeared in court. *C.R.H.*, 163 Ill. 2d at 271-72; *In re J.W.*, 87 Ill. 2d 56. In *People v. R.D.S.*, 94 Ill. 2d 77, 83 (1983), the supreme court held that the trial court's jurisdiction was not properly invoked where the mother appeared but did not have legal custody or control of the minor where the legal guardian (DCFS) did not receive proper notice of the adjudicatory hearing and did not appear at that hearing.

■ Respondent here asserts that DCFS, which was known to have legal guardianship of the minor throughout the proceedings, should have been formally named and served as a respondent in order for the court to have jurisdiction. Respondent suggests that, after the legal guardianship of the minor by DCFS was terminated by court order on January 27, 1997, the mother was not revested with legal guardianship or custody of the minor and the final disposition was therefore void. We cannot agree with this position.

We conclude that the requirement of formal notice to the DCFS, the legal guardian of the minor ward, was waived at the outset because the DCFS participated actively in the relevant proceedings. A DCFS representative appeared at the initial adjudicatory hearing and participated at various proceedings thereafter. The Act provides that the appearance of the minor's legal guardian or custodian, or a person named as a respondent in a petition, in any proceeding under the Act constitutes a waiver of the service of summons and submission to the jurisdiction of the court. 705 ILCS 405/5—15(7) (West 1996); see Pub. Act 90—590, eff. January 1, 1999 (adding 705 ILCS 405/5—520, 5—525(4)). Thus, where a party is not formally served but has actual notice and makes a general appearance, any objection to the form of notice is waived and the court has personal jurisdiction over the necessary party. *T.A.*, 181 Ill. App. 3d at 1037 (DCFS representative appeared as guardian and participated in proceedings; trial court had jurisdiction); see *J.W.*, 87 Ill. 2d at 62; *In re M.G.*, 301 Ill. App. 3d 401 (1998); *In re J.L.S.*, 188 Ill. App. 3d 815 (1989) (order committing minor to DOC was not void where legal guardian was not named or notified but appeared and participated in juvenile proceeding). The critical event for the receipt of formal or actual notice is the date of the adjudicatory hearing. *In re J.E.*, 285 Ill. App. 3d 965, 978 (1996). We find no jurisdictional defect on this basis.

■We also reject respondent's argument that, in order to continue the court's jurisdiction and validate its final judgment, the court was required to appoint a new legal guardian when the DCFS was discharged on January 27, 1997. The minor's mother was present on February 3, 1997. Respondent minor's counsel agreed that guardianship reverted to the mother at the close of the other case, and the State immediately served her in court with notice of the supplemental petition. She was present at the adjudication hearing on February 11, 1997. The appointment of the DCFS as a guardian does not require the termination of all parental rights. *In re Donte A.*, 259 Ill. App. 3d 246, 251 (1994). Even where a legal guardian or custodian has been appointed, there remain residual parental rights and responsibilities unless they are abrogated by a court order. See, *e.g.*, 705 ILCS 405/1—3(9), 2—27(2) (West 1996).

Based on the record presented, respondent as appellant has not affirmatively demonstrated that normal parental rights did not revert to the mother after the DCFS guardianship was terminated by the court order in the neglect case. Absent contrary evidence in the record, we conclude the mother retained *prima facie* parental rights that no one challenged in the court below. See *J.W.*, 87 Ill. 2d at 61. Respondent has cited no controlling legal authority requiring the trial court to ap-

point a new guardian when the guardianship of the DCFS was terminated by court order. Under the circumstances conveyed by the record, we determine the mother adequately fulfilled the role of a necessary party consistent with the requirements of due process. We conclude that the trial court had continuing jurisdiction to adjudicate the minor a delinquent upon finding that he violated his probation and to make him a ward of the court. The trial court also properly entered the dispositional order committing the minor to the DOC. The court's orders and final judgment are not void for lack of jurisdiction.

The orders and final judgment of the circuit court of Kane County are affirmed.

Affirmed.

INGLIS and COLWELL, JJ., concur.